IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-00354-PAB-KLM

CHRIS BERNARD HUGHES, on behalf of himself and all others similarly situated,

        Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, a Department of the State of
Colorado,
COLORADO PAROLE BOARD, a Department of the State of Colorado, and
RRK ENTERPRISES, INC., d/b/a INDEPENDENCE HOUSE, INC., a Colorado
Corporation,

        Defendants.

---

**ORDER**

---

        This matter before me is a Motion to Dismiss [Docket No. 55] filed by

defendants, the Colorado Department of Corrections (the "CDOC") and the Colorado

Parole Board (the "Parole Board"), on March 27, 2008.

        The CDOC and the Parole Board (collectively, the "State defendants"), relying on

a variety of legal and factual arguments, move to dismiss plaintiff Chris Bernard

Hughes' ("Hughes") Second Amended Complaint [Docket No. 42] in its entirety

pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter

jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief may be granted.  Hughes responded to the State defendants' motion to

dismiss on April 21, 2008 [Docket No. 61].  The State defendants replied on May 9,

2008 [Docket No. 63]. I find that the parties' arguments are adequately presented in their briefs and that oral argument would not significantly aid the Court's determination of the motion to dismiss. The matter is thus ripe for review.

I. FACTUAL BACKGROUND

In his Second Amended Complaint, Hughes asserts claims against the CDOC, the Parole Board, and defendant RRK Enterprises, Inc. Hughes alleges that the defendants failed to adequately respond to his needs as a mentally ill prisoner and parolee. For purposes of deciding the State defendants' motion to dismiss, the relevant facts from the Second Amended Complaint are as follows:

Plaintiff Hughes is an honorably-discharged veteran currently incarcerated in a prison facility operated by the CDOC. Since 2001, Hughes has been under the CDOC's supervision, either in prison or on community parole. Hughes alleges that he suffers from mental illnesses stemming from his military service, including bi-polar disorder and schizophrenia, and that he has been affected by these illnesses for over thirty years.

Following a term of imprisonment between late 2001 and the middle of 2004, Hughes was assigned to Independence House, a residential community corrections facility located in Denver, Colorado and operated by defendant RRK Enterprises, Inc. After walking away from that facility, Hughes was arrested and charged with escape in March 2005. He was held in the Arapahoe County Jail and later transferred to the CDOC's Sterling Correctional Facility ("SCF"). On November 29, 2005, Hughes was released on parole. Shortly thereafter, on December 10, 2005, Hughes left the homeless shelter where he had been assigned on parole. Hughes was again arrested

2

and charged with escape in March 2006, at which time he was held in the Denver County Jail.

In January 2007, Hughes pled no contest to one count of escape from Independence House in return for dismissal of the escape charge relating to his walk away from the homeless shelter. Hughes' parole officer recommended that Hughes' parole be revoked, although it is unclear from the Second Amended Complaint when this recommendation was made. Hughes remained in the Denver County Jail until February 8, 2007, when the Parole Board conducted a hearing regarding revocation of Hughes' parole. The Parole Board, through a presiding member, decided to revoke Hughes' parole. Hughes has since been imprisoned under the supervision of the CDOC.

## II. STANDARD OF REVIEW

### A. Lack of Subject Matter Jurisdiction

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). Here, the State defendants assert Eleventh Amendment immunity, which constitutes a facial attack on the allegations of subject matter jurisdiction contained in the Second

Amended Complaint.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Accordingly, the Court "must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995).  However, "[t]he burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

### B.  Failure to State a Claim

Pursuant to Rule 12(b)(6), dismissal of a claim for relief is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).  In testing the legal sufficiency of the complaint, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Under Rule 12(b)(6), the Court need not accept conclusory allegations as true. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  Rather, to survive dismissal pursuant to Rule 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'"  *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ----, 127 S.Ct. 1955, 1974 (2007)).  The plausibility standard articulated by the Supreme Court in *Twombly* did not, however, displace Federal Rule of Civil Procedure

8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Erikson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curium). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 127 S.Ct. at 1964).

III.  ANALYSIS

A.  Sovereign Immunity

1. *Section 1983 Claims*

The CDOC argues that Hughes' claims against it under 42 U.S.C. § 1983 must be dismissed because they are barred by the Eleventh Amendment of the United States Constitution.  Hughes responds that his claim for prospective injunctive relief against the State defendants is cognizable under the doctrine announced in *Ex parte Young*, 209 U.S. 123 (1908).  Hughes also contends that his claims alleged under Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131 *et seq.*, provide a vehicle to sue both the CDOC and the Parole Board notwithstanding the Eleventh Amendment.  While only the CDOC raises the Eleventh Amendment as a defense to Hughes' Section 1983 claims, I address the extent of immunity from suit as to both the CDOC and the Parole Board in light of the mandate of 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915A(b) (2006) (requiring courts to dismiss, in whole or in part, a complaint in a civil action brought by a prisoner against a governmental entity "if the complaint . . . fails to state a claim . . . or seeks monetary relief from a defendant who is immune from such relief").

The Eleventh Amendment bars suits in federal court against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The immunity conferred by the Eleventh Amendment extends to a state and its instrumentalities, including state agencies. *Northern Ins. Co. of New York v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006); *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) (immunity extends to the state, its instrumentalities, and its officers in their official capacities). There are two recognized exceptions to this immunity – waiver by the state and valid abrogation of the state's immunity by Congress. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam)*; Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54-55 (1996)). If a state and its agencies are immune from suit under the Eleventh Amendment, such immunity applies regardless of the relief requested, thus protecting the state and its agencies from suits for both legal and equitable relief. *Fed. Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007).

Colorado has not waived its Eleventh Amendment immunity. *See Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (holding that Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101, *et seq.*, does not waive the State's Constitutional immunity; affirming dismissal of claims against the State and its Department of Corrections). Nor has Congress abrogated state sovereign immunity from claims brought under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979).

The CDOC and the Parole Board are state agencies, created pursuant to Colo. Rev. Stat. §§ 24-1-128.5 and 17-2-201, respectively. *See Hoffler v. Colorado Dep't of Corr.*, 27 P.3d 371, 374 (Colo. 2001) (characterizing the Parole Board as a state agency). Without question, the Eleventh Amendment precludes Hughes' Section 1983 claims against the CDOC. *Griess*, 841 F.2d at 1044 (stating that application of Eleventh Amendment immunity to the Colorado Department of Corrections is "undeniable" absent waiver by the State) (citing *Alabama*, 438 U.S. at 782). The Tenth Circuit Court of Appeals has not addressed a state parole board's immunity under the Eleventh Amendment in a published opinion. But the Court of Appeals has consistently held that such immunity extends to parole boards in recent unpublished opinions. *See Rouse v. Colorado State Bd. of Parole*, 242 F. App'x 498, 500 (10th Cir. 2007) (unpublished) (holding Colorado State Parole Board immune from Section 1983 claims for damages as a state agency); *Giese v. Scafe*, 133 F. App'x 567, 569 (10th Cir. 2005) (unpublished) (parole board entitled to immunity under Eleventh Amendment); *Reid v. Oklahoma Pardon & Parole Bd.*, 67 F. App'x 515, 517 (10th Cir. 2003), *cert. denied* 541 U.S. 906 (2004) (unpublished) (suit for declaratory and injunctive relief against state department of corrections and parole board barred by Eleventh Amendment). Although not binding, I find these opinions persuasive. Therefore, I conclude that the Parole Board, as a Colorado state agency, benefits from the immunity conferred by the Eleventh Amendment to the same extent as the CDOC.

I find meritless Hughes' contention that the Eleventh Amendment bar is negated by the doctrine of *Ex parte Young*, which allows federal courts to entertain suits seeking

prospective injunctive relief against state officials. *Ex parte Young* does not apply here because Hughes has not named any individual defendant in his Second Amended Complaint. *See Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 866 (10th Cir. 2003); *Elephant Butte Irrigation Dist. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998) ("The *Ex parte Young* doctrine . . . applies only when the lawsuit involves an action against state officials, not against the state.").

Accordingly, plaintiff's Section 1983 claims against the State defendants are barred by the Eleventh Amendment.

### 2. ADA Claims

As with his Section 1983 claims, Hughes' ADA claims against the State defendants are barred by the Eleventh Amendment absent a valid exception. The State defendants, however, do not assert the Eleventh Amendment as a defense to Hughes' ADA claims. Because the parties have neither raised nor briefed the issue of the validity of Congress's purported abrogation of state sovereign immunity in the ADA, see 42 U.S.C. § 12202, as to the conduct at issue in this case, I decline to decide the issue sua sponte.[1] *See United States ex rel. Burlbaw v. Orenduff*, --- F.3d ----, 2008

---

[1] Forgoing consideration of the interaction between Congress's enactment of Title II of the ADA and the State defendants' immunity under the Eleventh Amendment at this time is further supported by the synergy of two doctrines outlined by the Supreme Court. First, "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). Second, under *United States v. Georgia*, 546 U.S. 151, 159 (2006), district courts addressing the validity of Congress's abrogation of state sovereign immunity via Title II of the ADA must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported

8

WL 5046814, *8 (10th Cir. 2008) (court may raise Eleventh Amendment immunity sua sponte, but is not obligated to do so; "[u]nless the State raises the matter, a court can ignore it" (quoting *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998))).

B.  Statute of Limitations

Hughes filed his Complaint [Docket No. 1] alleging claims against the CDOC, among others, on February 20, 2007.  Hughes filed his Second Amended Complaint [Docket No. 33, Ex. 1], which added claims against the Parole Board, on January 30, 2008.  The CDOC asserts that the statute of limitations bars Hughes' claim that the CDOC violated the ADA by failing to provide Hughes mental health treatment with medications while he was in prison, including the time he was incarcerated at the SCF.[2] Mot. to Dismiss at 4-5.  Hughes responds that at least some of the conduct he challenges occurred while he was incarcerated in the SCF from March 2005 to November 2005.  Resp. to Mot. to Dismiss at 6-7.  Hughes posits that such allegations fall within the statute of limitations period because the conduct occurred less than two years before he filed his lawsuit in February 2007.  *Id.* at 7.

The Parole Board also raises the statute of limitations as a bar to Hughes' allegation that the Parole Board failed to facilitate his access to mental health treatment

_____

abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Thus, before this Court could properly reach the question of the extent of the State defendants' constitutional immunity to Hughes' ADA claims, it must first determine "which aspects of the State's alleged conduct violated Title II."  I find that even if the inquiry mandated by *United States v. Georgia* is required in this case, it must await further briefing by the parties on an appropriate motion.

[2]  Given my conclusion that the Eleventh Amendment bars Hughes' Section 1983 claims, I do not address the State defendants' assertion that such claims are also barred, in part, by the applicable statute of limitations.

and medications when he was released on parole.  *Id.* at 5-6.  Hughes contends that none of his claims against the Parole Board are time-barred because his addition of the Parole Board as a party to the Second Amended Complaint merely supplied the identity of a previously named "John Doe" defendant and, therefore, relates back to the date of his original pleading under Fed. R. Civ. P. 15(c)(1).

Colorado's general two-year statute of limitations, Colo. Rev. Stat. § 13-80-102, applies to actions arising under Title II of the ADA.  *See Quinn v. Univ. of Okla.*, 276 F. App'x. 809, 810 (10th Cir. 2008) (unpublished) (affirming grant of summary judgment against plaintiff on claims brought under Title II of the ADA based on two-year limitations period); *Wilkins v. Colo. Dep't of Soc. Servs.*, 9 F. App'x. 818, 819 (10th Cir. 2001) (unpublished).  "In general, . . . claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994).  Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint.  *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008); *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

### 1. Amended Claims Against the CDOC

In support of its assertion that any claim involving Hughes' incarceration prior to

November 29, 2005 is time-barred, the CDOC argues that Hughes knew or should have known of his claims regarding mental health treatment in prison in 2001 when he allegedly began making complaints about the adequacy of his treatment. Mot. to Dismiss at 5. This argument is unavailing for two reasons. First, the Court finds no allegation regarding Hughes' alleged complaints beginning in 2001 in the Second Amended Complaint. Second, and more importantly, Hughes' incarceration at the SCF was a separate event from his prior imprisonment. He could not have discovered or known of any alleged ADA violations occurring during his confinement at the SCF until he was transferred to that facility. Notably, however, Hughes essentially concedes that any claims relating to conduct prior to the time he served at the SCF are untimely because he fails to proffer any reason why claims arising more than two years before the filing of the original complaint in this matter are not time-barred. *See* Resp. to Mot. to Dismiss at 6-7.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment that "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" relates back to the date of the original complaint. In his first pleading, filed on February 20, 2007, Hughes alleged that "while in prison, the person(s) evaluating Mr. Hughes did not recommend he receive, and therefore, he did not receive the mental health treatment or medications he needed." Orig. Compl. ¶ 45. Hughes also alleged in that pleading that the defendants "consistently refused and utterly failed to honor their promises to provide help to all their residents or clients, depriving Mr. Hughes of the specific mental health services and medications he needs to successfully complete his sentence." *Id.* ¶ 61. The CDOC

11

was thus on notice as of service of the original complaint that Hughes brought suit challenging the CDOC's alleged failure to provide mental health treatment during his imprisonment. Because Hughes' original complaint put the CDOC on notice of his claims regarding denial of medical care while he was in prison, the surprise that Rule 15(c)(1)(B) guards against appears to be nonexistent. *See Benton v. Bd. of County Comm'rs.*, No. 06-cv-01406-PSF-MEH, 2007 WL 4105175, *3 (D. Colo. Nov. 14, 2007) ("As long as there is a 'factual nexus' between the original and amended complaints, the amended claim 'is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment.'" (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983))).

Hughes' Second Amended Complaint alleges that he was incarcerated at the SCF between March 2005 and November 2005. Second Am. Compl. ¶¶ 38-39. His allegation that the CDOC failed "to provide to Mr. Hughes mental health treatment with medications when he was in prison, including his incarceration at the Sterling prison until in or about November 2005," Second Am. Compl. ¶ 84, merely amplifies the conduct and occurrences referred to in the original complaint. Hughes' claims alleging ADA violations against the CDOC while he was confined at the SCF are therefore timely under Rule 15(c)(1)(B). *See Kidwell v. Bd. of County Comm'rs*, 40 F. Supp. 2d 1201, 1217 (D. Kan. 1998) ("As a general rule, amendments will relate back if they amplify the facts previously alleged . . . ."); *Benton*, 2007 WL 4105175 at *3.

However, given that the essence of Hughes' ADA claims is that the CDOC failed to provide mental health medication, Hughes reasonably should have known of any deficiencies in the CDOC's mental health treatment at the time that he allegedly

12

required such services and did not receive them. Accordingly, any claims asserted pursuant to the ADA based on conduct that occurred before February 20, 2005 are untimely and may not be pursued in this action.

### 2. Amended claims against the Parole Board

Hughes first asserted claims against the Parole Board in his Second Amended Complaint, which is dated January 30, 2008 and was accepted for filing on February 22, 2008.[3] The date that the Second Amended Complaint was filed controls for purposes of applying the statute of limitations. *See Koch v. Shell Oil Co.*, 8 F. Supp. 2d 1264, 1268 (D. Kan. 1998). The Parole Board maintains that the statute of limitations bars Hughes' claims concerning the Parole Board's alleged failure to set appropriate parole conditions and to inform Hughes' parole officer about Hughes' mental health needs prior to releasing him on parole. For statute of limitations purposes, Hughes argues that the addition of the Parole Board as a defendant in the Second Amended Complaint relates back to the date that the original complaint was filed, February 20, 2007, making claims against the Parole Board relating to conduct that occurred in November 2005 timely. Hughes submits that the replacement of the "One or More John Does" named in the original complaint with the Parole Board allows him to invoke the provisions of Rule 15(c)(1) of the Federal Rules of Civil Procedure.

For an amendment that "changes the party or the naming of the party against whom a claim is asserted" to relate back to the date of the original pleading under Rule

---

[3] Hughes filed a motion for leave to file a second amended complaint on January 17, 2008 [Docket No. 30], but later moved to withdraw the first version of his Second Amended Complaint and filed the revised version on January 30, 2008 [Docket No. 33], making the later date the operative date of the pleading.

15(c)(1)(C), the requirements of Rule 15(c)(1)(B) must be satisfied, i.e., the amendment must address the same facts set out in the first pleading.  Fed. R. Civ. P. 15(c)(1)(C).  Further, within the 120-day period provided by Federal Rule of Civil Procedure 4(m), the new party must have "received such notice of the action that it will not be prejudiced in defending on the merits."  *Id.*  Finally, relation back under Rule 15(c)(1)(C) is limited to circumstances where the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.*  In the Tenth Circuit, "[a] plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type [Rule 15(c)(1)(C)] was meant to address."  *Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004).  Stated differently, replacing an unknown defendant on the basis of new information is not a "mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii);  *Garrett*, 362 F.3d at 697.  Therefore, Hughes' substitution of the Parole Board for a previously unknown "John Doe" defendant does not allow relation back of his amended claims against the Parole Board to the date of his original complaint.  *See Garrett*, 362 F.3d at 697.

Because Hughes does not identify any other reason why the statute of limitations should be equitably tolled with respect to his claims against the Parole Board, I now outline which ADA claims against the Parole Board are barred by the two-year statute of limitations.  *See Aldrich*, 627 F.2d at 1041 n.4 ("[W]hen the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").  Hughes alleges he

was placed on parole on November 29, 2005.  Second Am. Compl. ¶ 39.  He charges

the Parole Board with failing to include appropriate information regarding parolees'

mental heath conditions in the parole conditions documents issued at the time the

Parole Board releases a prisoner on parole.  *Id.* ¶¶ 11-12.  Hughes also claims the

Parole Board fails to timely deliver these parole conditions documents to parole officers.

*Id.* ¶ 12.  Hughes alleges that, in his case, his parole officer did not receive any

information concerning Hughes' alleged mental illness before or at the time Hughes

was released on parole.  *Id.* ¶ 40.  In turn, Hughes attributes his December 10, 2005

walk away from the homeless shelter to the State defendants denying him access to

mental health treatment and medications while on parole.  *Id.* ¶ 42.  Hughes further

claims that the State defendants deliberately impeded his access to mental health

treatment throughout his parole period.  *Id.* ¶¶ 65-66.  Hughes also claims that the

Parole Board's revocation of his parole at a February 8, 2007 hearing was marred by

violations of the ADA.  *Id.* ¶¶ 48, 65.

Comparing the date on which Hughes filed his Second Amended Complaint,

January 30, 2008, with the allegations detailed above, I conclude that the statute of

limitations prevents Hughes from going forward with ADA claims based on alleged

conduct by the Parole Board before January 30, 2006.  Specifically, claims based on

the Parole Board's alleged failure to include and timely transmit appropriate information

about his mental health in its parole conditions documents are time-barred since

Hughes alleges that this happened from November to December 2005.  *See* Second

Am. Compl. ¶¶ 39-42.  So too are any claims deriving from the Parole Board's alleged

failure to facilitate Hughes' access to mental health treatment and medications prior to January 30, 2006. Hughes reasonably should have known of any such claims by the time he walked away from the homeless shelter in December 2005. For reasons detailed below, I further conclude that Hughes' timely ADA claims against the Parole Board must also be dismissed.

### C. Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides in relevant part that a "prisoner confined in a jail, prison, or other correctional facility" may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (2006). Section 1997e(e) prohibits claims for money damages, but does not bar declaratory or injunctive relief where a prisoner fails to allege or prove the requisite physical injury. *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 808 (10th Cir. 1999). Hughes is currently incarcerated for parole violations, see Second Am. Compl. ¶ 4, and he seeks money damages on his ADA claims for mental injuries. *Id.* ¶¶ 67-68. Thus, the PLRA applies in this case. *See* 42 U.S.C. § 1997e(h) (defining the term "prisoner" to include, among others, "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for . . . violations of criminal law or the terms and conditions of parole").

The State defendants seek dismissal of Hughes' claims seeking money damages, arguing that Hughes' allegations of physical injury are insufficient under Section 1997e(e). The Second Amended Complaint alleges that "Mr. Hughes' injuries and damages include . . . physical and mental injuries, including . . . depression and

16

anxiety and their related physical illness manifestations, and lost liberty."  Second Am. Compl. ¶¶ 67, 88.  Nowhere else does the Second Amended Complaint mention or infer that Hughes sustained any physical injury as a result of the defendants' conduct. Indeed, in his response to the State defendants' Section 1997e(e) argument, Hughes relies on this same allegation, but elaborates that anxiety is "commonly known" as having physical manifestations including dizziness, chest pain, nausea, increased heart rate, headaches, and other similar symptoms.  Resp. to Mot. to Dismiss at 15.

While Hughes alleges that he suffered "physical injuries," he defines such injuries as the physical manifestations of depression and anxiety.  I find these allegations insufficient to withstand the "physical injury" requirement of Section 1997e(e).  A straightforward reading of Section 1997e(e) requires that a prisoner cite a physical injury that is separate from mental and emotional injuries he may have suffered.  Consistent with this reading, a number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries.  *See*, *e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming sua sponte dismissal with prejudice despite prisoner's affidavit stating that he suffered weight loss, appetite loss, and insomnia after disclosure of his medical status because the language and purpose of Section 1997e(e) "preclude reliance on the somatic manifestations of emotional distress"); *Cooksey v. Hennessey*, No. C 07-3829 MHP, 2007 WL 2790365, *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as 'a prior showing of physical injury.'"); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 905 (N.D. Cal. 2004) (same);

*Cannon v. Burkybile*, No. 99 C 4623, 2000 WL 1409852, *6 (N.D. Ill. Sept. 25, 2000) (allegations of headaches, insomnia, stress, and stomach anxiety insufficient to meet the physical injury requirement under Section 1997e(e)); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and severe headaches caused by emotional distress not a "physical injury" under the PLRA).  Here, Hughes' allegations suggest that any physical injuries he suffered stemmed directly from his alleged mental and emotional injuries and constituted only common manifestations of depression and anxiety.  As derivative manifestations of mental or emotional injuries, these alleged physical injuries cannot support claims for damages pursuant to 28 U.S.C. § 1997e(e).[4]

D.  Failure to State a Claim for Relief Under Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (2006).  "To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."  *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d

---

[4]  Because I hold that Hughes' damages claims are barred by the PLRA, I need not address the Parole Board's contention that it is absolutely immune from damages claims stemming from its quasi-judicial actions.  Nonetheless, even if my conclusion regarding the application of the PLRA differed, controlling case law undeniably affords the Parole Board immunity from damages claims tied to its adjudicatory actions at Hughes' parole revocation hearing.  *See Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992) (holding that damages "simply are not available" against parole board members in connection with their revocation of a prisoner's parole).

1185, 1193 (10th Cir. 2007).

The State defendants seek dismissal of Hughes' ADA claims on four grounds: (1) Hughes fails to adequately plead a disability; (2) Hughes' claims for denial of mental health treatment are not cognizable under Title II; (3) the State defendants' actions were per se nondiscriminatory because they were mandated by the laws of Colorado; and (4) Hughes' failure to accommodate claim is fatally flawed because he never requested reasonable accommodations. *See* Mot. to Dismiss at 7-11. I address each of these theories in turn.

### 1. Pleading a Disability Under the ADA

A disability within the meaning of the ADA requires proof that an individual has an impairment that limits one or more of his major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(2). As the State defendants correctly point out, a "disability" under the ADA requires more than a diagnosis of mental or physical impairment. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002). Thus, a plaintiff must ultimately prove either an actual or perceived substantial limitation in a major life activity to prevail on a claim under the ADA. The State defendants acknowledge that Hughes alleged that his mental illness substantially limits one or more of his major life activities. *See* Second Am. Compl. ¶ 27. But they counter that the Second Amended Complaint fails to specify any particular major life activity in which he is substantially limited and argue that this lack of detail warrants dismissal of Hughes' ADA claims.

The State defendants rely on Tenth Circuit precedent addressing a plaintiff's prima facie burden on an ADA claim. These cases, however, do not detail what is

required of a plaintiff at the pleading stage. In *Doebele v. Sprint/United Management Company*, 342 F.3d 1117, 1129 (10th Cir. 2003), the Court of Appeals discussed proof of disability in the context of a motion for summary judgment. Likewise, *Lanman v. Johnson County*, 393 F.3d 1151, 1154 (10th Cir. 2004), which the State defendants cite for the proposition that a plaintiff must establish his disability under the ADA "as a threshold matter," was decided in the summary judgment context. And in *Poindexter v. Atchison, Topeka & Santa Fe Railway Co.*, 168 F.3d 1228, 1232 (10th Cir. 1999), the Tenth Circuit detailed a plaintiff's burden in order to prevail on the merits, rather than addressing what a plaintiff must include in his "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The *Poindexter* court made clear that "a plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment." *Poindexter*, 168 F.3d at 1232. But it specifically cautioned that its holding did not affect federal pleading standards, stating that "[a] plaintiff has the option of clarifying his or her position at the pleading stage or waiting until trial to prove with particularity the impairment and major life activity he or she asserts are at issue." *Id.*

In short, none of the cases relied on by the State defendants require Hughes, at the pleading stage, to identify a particular life activity affected by his alleged mental impairment or detail the nature of his substantial limitations. Hughes identifies an impairment of which the State defendants were allegedly aware and alleges that such impairment constitutes a disability under the ADA. Of course, Hughes must ultimately prove that he is substantially limited in a recognized major life activity to prevail on his ADA claims. At the pleading stage, however, Hughes' allegation regarding disability is

sufficient.  *See Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading."); *cf. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) (holding that a plaintiff need not plead a prima facie case of employment discrimination to adequately allege a claim under Title VII of Civil Rights Act of 1964), *abrogated in part on other grounds by Twombly*, 550 U.S. 544.

### 2.  Denial of Mental Health Treatment

The State defendants challenge Hughes' right to relief under the ADA with respect to their alleged denial of medical treatment of Hughes' mental illnesses.  The State defendants correctly note that the Tenth Circuit is among a number of circuits that hold that the ADA does not provide a remedy for medical malpractice.  In *Fitzgerald v. Corrections Corporation of America*, the Tenth Circuit Court of Appeals explained that "the term *otherwise qualified* cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning."  403 F.3d 1134, 1144 (10th Cir. 2005) (internal quotations marks omitted).  This aversion to analyzing medical treatment decisions under the rubric of the ADA does not, however, go so far as the State defendants would have it.

The ADA "unmistakably includes State prisons and prisoners within its coverage."  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998).  The Supreme Court has also noted that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such

fundamentals as . . . medical care . . . constitute[s] exclusion from participation in or . . . denial of the benefits of the prison's services, programs, or activities." *Georgia*, 546 U.S. at 157 (alterations and internal quotation marks omitted). The question is thus in what circumstances does the ADA afford a remedy when a plaintiff alleges denial of medical treatment.

Addressing this question, courts have distinguished between claims asserted under the ADA that allege that the medical treatment that a plaintiff received or had access to was inadequate, versus claims alleging that a plaintiff was discriminatorily precluded from access to medical treatment altogether. *See*, *e.g.*, *Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006); *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. Jan. 29, 2001) (unpublished) (noting that allegations that a disabled prisoner has been denied medical-related services that have been provided to other prisoners may state an ADA claim)*; Moore v. Prison Health Servs., Inc.*, 1999 WL 1079848, *1 (10th Cir. Dec. 1, 1999) (unpublished table opinion) (holding that the ADA affords "disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities"); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999).

While *Fitzgerald* did not explicitly address this distinction, the incident involved in that case clearly fell into the first category – claims that actually resemble medical malpractice claims because the prisoner challenges the course of treatment that was selected. There, the plaintiff fractured his femur and was seen by a physician who recommended that one treatment option was "to do nothing." *Fitzgerald*, 403 F.3d at

1137. The plaintiff then attempted to hold the state department of corrections liable under the ADA for following the doctor's advice. *Id.* Given this context, the Court of Appeals concluded that "[t]hese are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA or the Rehabilitation Act." *Id.* at 1144. *Fitzgerald*, then, does not foreclose Hughes from pleading a claim under the ADA for discriminatory exclusion from generally available medical services offered by the State defendants.

Turning to the Second Amended Complaint, Hughes alleges that the CDOC completely denied him access to medical treatment for his mental disability. A sample of Hughes' allegations that fall within the relevant time period, i.e., those not barred by the statute of limitations, reveal that Hughes has proffered facts that create a plausible inference of discriminatory denial of access to medical care. Hughes alleges that the CDOC maintains a policy of assuring that inmates and parolees receive mental health treatment that they require. *Id.* ¶¶ 58, 69-70. Hughes further alleges that the CDOC intentionally failed to provide him mental health treatment while he was in the SCF. Second Am. Compl. ¶¶ 66, 84. He alleges that the CDOC also denied his access to such treatment while on parole. *Id.* ¶¶ 41-42, 66. Taken together, these allegations suffice to plead a claim that Hughes was discriminatorily denied access to medical care in contravention of Title II of the ADA by the CDOC.

On the other hand, I am unable to find similar allegations regarding conduct occurring since January 30, 2006 that plausibly implicate the Parole Board in discriminating against Hughes by denying him access to necessary medical care. Therefore, to the extent Hughes asserts ADA claims against both of the State

23

defendants for denial of medical care, his claims against the Parole Board must be dismissed. I dismiss such putative ADA claims against the Parole Board without prejudice. From the Second Amended Complaint, it appears that Hughes' relevant contact with the Parole Board took place on or around November 29, 2005 when he was released on Parole and on February 8, 2007, when the Parole Board revoked his parole. *See* Second Am. Compl. ¶¶ 11-13, 39, 48-49. Amended claims against the Parole Board would be appropriate only if Hughes can identify instances in which the Parole Board discriminatorily denied him access to medical care separate from these November 2005 and February 2007 interactions.

### 3. Discriminatory Revocation of Parole

Relying on Colorado statutes that pertain to the arrest of a parolee and parole revocation proceedings, the State defendants argue that any of their actions affecting the revocation of Hughes' parole cannot give rise to discrimination claims under the ADA. Section 17-2-103(1) of the Colorado Revised Statutes requires that a parole officer "file a complaint seeking revocation of the parole of any parolee who . . . [i]s arrested and charged with . . . [a] felony." Colo. Rev. Stat. § 17-2-103.5(1)(a)(II)(A) (2008). If a parolee has been convicted of a criminal offense while on parole, the Parole Board "shall accept said conviction as conclusive proof of a violation and shall conduct a hearing as to the disposition of parole only." Colo. Rev. Stat. § 17-2-103(9)(b). Citing these statutes, the State defendants argue that (1) the CDOC – which oversees parole officers – could not have discriminated against Hughes by recommending the revocation of his parole because he was charged with escape, a felony offense, and (2) the Parole Board could not have discriminated against Hughes

24

during his parole revocation hearing because it was required to accept his no contest plea to one count of escape as conclusive evidence of a parole violation.

In response, Hughes argues that his parole officer "improperly charged him with felony escape" because Hughes walked away from Independence House and the homeless shelter as a result of not receiving mental health medication. Resp. to Mot. to Dismiss at 11-12. Hughes also asserts that the Parole Board discriminated against him and failed to make reasonable accommodations by revoking his parole based on the parole officer's recommendation, rather than continuing his parole. *Id.* at 12; *see also* Second Am. Compl. ¶ 48. Hughes admits that he "was convicted of escape related crimes for walking away from community-based residential facilities." Resp. to Mot. to Dismiss at 9.

Hughes' claim that the State defendants denied him "the benefits of completing his sentence in the community on parole," Second Am. Compl. ¶ 65, is not cognizable under Title II of the ADA. Hughes was not denied the opportunity to participate in parole. Instead, he was placed on parole but later disciplined for failure to comply with parole conditions. In essence, Hughes contends that his mental disability caused him to walk away from Independence House and the homeless shelter and that the State defendants' penalization of such conduct constitutes discrimination. The court in *Scherer v. Pennsylvania Department of Corrections*, No. 3:2004-191, 2007 WL 4111412 (W.D. Pa. Nov. 16, 2007), addressed a similar claim. There, the plaintiff alleged that the state department of corrections discriminated against a deceased prisoner in violation of the ADA by revoking his parole and assigning him to restrictive housing confinement in response to the prisoner's disability-caused conduct. *Id.* at *9.

The court rejected such allegations as adequate to state a claim under Title II of the ADA:

> The Court is at a loss to see how a service or program was not provided to the Decedent because of the fact that he was disciplined. The Decedent was disciplined for his conduct, conduct that the Court must assume for purposes of this motion to dismiss was a result of the [Decedent's] mental illness. There is no indication that the Decedent was disciplined differently from other prisoners because of his disability, only that the Plaintiff believes the Decedent's discipline should have been meted out with a consideration of his disability.

*Id.* As in *Scherer*, Hughes claims that the State defendants should have reprimanded his disability-caused conduct differently, namely, by allowing him to retain his parole. As discussed above, Hughes' parole officer was required to recommend parole revocation and the Parole Board was required to accept Hughes' admission of felony escape as a parole violation. *See* Colo. Rev. Stat. §§ 17-2-103, 17-2-103.5. Thus, even if continuation of Hughes' parole – a matter wholly within the Parole Board's discretion – could be considered one of the "benefits of the services, programs or activities" offered by the State Defendants per Title II, 42 U.S.C. § 12132, there is no indication Hughes was subject to different disciplinary standards than other non-disabled parole violators. The Court finds the rationale underlying the *Scherer* opinion persuasive and is similarly unable to ascertain an alleged violation of Title II of the ADA based on the State defendants' discipline of Hughes' parole violation.

The Court declines to scrutinize the State defendants' disciplinary action revoking Hughes' parole under the ADA for two additional reasons. First, in *Purkey v. Simmons*, 29 F. App'x 546, 547 (10th Cir. 2002) (unpublished), the Tenth Circuit held that "it is clear that state corrections and parole officials have no duty to a parolee to prevent him or her from committing further crimes and being sent back to prison."

Although *Purkey* is a nonprecedential order and judgment, the Court of Appeals drew the above conclusion from Supreme Court case law and I find it persuasive here. Recognizing Hughes' claim that the ADA obligates the State defendants to disregard parole violations committed by a mentally disabled parolee when the conduct is caused by such disability could significantly undermine the State's legitimate penological interests. *See Thompson v. Davis*, 295 F.3d 890, 894 n.4 (9th Cir. 2002). While Hughes relies on the Ninth Circuit's decision in *Thompson v. Davis* for the proposition that "parole revocation decisions are covered by the ADA," Resp. to Mot. to Dismiss at 11, the Court finds that case is instructive in other respects. Specifically, *Thompson* held that "Title II does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability." *Id.* As the *Thompson* court explained, "[a] person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole." *Id.* Thus, even assuming that the Parole Board revoked Hughes' parole based on his disability-caused conduct, the Parole Board is entitled to account for how a parolee's disability affects his fitness for continuation of parole following a parole violation.

Second, according to the Colorado statutory scheme governing parole revocation, Hughes cannot satisfy the requirement stated by the Tenth Circuit in *Fitzgerald* that, under Title II of the ADA, he must "show that he was 'otherwise qualified' for the benefits he sought and that he was denied those 'solely by reason of disability.'" 403 F.3d at 1144. In light of Hughes' admission of felony escape, the State

defendants did not revoke his parole, or recommend the same, solely by reason of Hughes' alleged disability.

For the foregoing reasons, Hughes' ADA claims stemming from the CDOC's recommendation that his parole be revoked and the Parole Board's revocation of his parole must be dismissed.[5]

### 4. Failure to Accommodate Claim

The State defendants challenge the viability of Hughes' claim that they failed to make reasonable modifications as required under Title II of the ADA, claiming that Hughes failed to allege that he ever requested such modifications. Because Hughes fails to state a claim against the Parole Board for revocation of his Parole as explained above, I analyze Hughes' failure to accommodate claim only as to the CDOC.

As it is used in Title II, the term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Thus, a plaintiff may prove a violation of Title II by demonstrating that a public entity failed to make "reasonable modifications"[6] allowing the individual to

---

[5] Because Hughes fails to state a claim under Title II of the ADA relating to revocation of his parole, I need not address the State defendants' argument that such a challenge is barred by the doctrines announced in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994).

[6] The term "reasonable accommodation" derives from the language of Title I of the ADA, which differs from Title II's use of the term "reasonable modifications," but the Tenth Circuit "has used the terms interchangeably, referring to an individual's request for a 'modification' under Title II as a request for 'accommodation.'" *Robertson*, 500 F.3d at 1195 n.8.

partake in services, programs, or activities offered by the public entity. *See Robertson*, 500 F.3d at 1195. Without knowing of Hughes' need for reasonable modifications to the programs, services and activities offered, the CDOC argues that it had no obligation offer Hughes any individualized alterations.

While the Second Amended Complaint is not a model of clarity with respect to whether Hughes requested reasonable modifications and when he did so, some allegations do suggest that such requests may have occurred. *See*, *e.g.*, Second Am. Compl. ¶¶ 45, 47-48, 50, 85. Even if these allegations were insufficient, however, the CDOC ignores the fact that a public entity need not always learn of an individual's need for reasonable modification by that individual's request. Rather, "[w]hen a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Robertson*, 500 F.3d at 1197.

Applied here, Hughes has alleged enough facts that it is at least plausible that his need for reasonable modifications was obvious. Hughes alleges that the CDOC was aware of his mental health condition by virtue of a state court sentencing order dating to early 2001, Second Am. Compl. ¶¶ 29-30, and it unquestionably was aware of his repeated attempts to participate in a supervised program of parole. The CDOC's contention that Hughes has inadequately pleaded a failure to accommodate claim against it is therefore without merit.

IV. CONCLUSION

Therefore, it is

**ORDERED** that the State defendants' Motion to Dismiss [Docket No. 55] is

granted in part and denied in part.  It is further

**ORDERED** that Hughes' claims asserted pursuant to 28 U.S.C. § 1983 are dismissed with prejudice.  It is further

**ORDERED** that Hughes' claims against the Parole Board are dismissed.  As explained herein, Hughes' claims against the Parole Board under Title II of Americans with Disabilities Act, §§ 12131 *et seq.*, for discriminatory denial of medical care are dismissed without prejudice, but Hughes' Title II claims against the Parole Board arising out of the revocation of Hughes' parole are dismissed with prejudice.  It is further

**ORDERED** that Hughes' claims seeking equitable relief pursuant to Title II of the Americans with Disabilities Act, §§ 12131 *et seq.*, against the CDOC may proceed according to the terms of this Order.  Thus, any claims against the CDOC that arose before February 20, 2005 are time-barred and, therefore, dismissed with prejudice.  So too are claims against the CDOC arising from the CDOC's recommendation that Hughes' parole be revoked.  In addition, Hughes' Title II claims for money damages are dismissed without prejudice.

DATED January 15, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge