IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-00354-PAB-KLM

CHRIS BERNARD HUGHES, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, a Department of the State of Colorado, and
RRK ENTERPRISES, INC., d/b/a INDEPENDENCE HOUSE, INC., a Colorado Corporation,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS

This matter is before the Court on defendant Colorado Department of Corrections' ("CDOC") Motion to Dismiss Based Upon the Fugitive Disentitlement Doctrine [Docket No. 137], filed on August 24, 2009. Plaintiff's counsel filed a response brief on September 5, 2009 [Docket No. 140]. For the following reasons, the Court grants the motion and dismisses this case.

## I. BACKGROUND

Plaintiff Chris Bernard Hughes filed this case on February 20, 2007, alleging claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 1983, and state contract law. In his Second Amended Complaint [Docket No. 42], which the Court accepted for filing on February 22, 2008 [Docket No. 41], Hughes claimed that the CDOC and the Colorado Parole Board (no longer a defendant in this action) violated

the ADA and the Eighth and Fourteenth Amendments of the United States Constitution by failing to provide him with mental health treatment and medications. Hughes' contract claim alleges that, in violation of a written agreement with defendant RRK Enterprises, Inc., Hughes was not provided adequate access to mental health treatment during his parole residency at Independence House, a residential community corrections facility operated by RRK Enterprises, Inc.

The CDOC and the Colorado Parole Board moved to dismiss plaintiff's claims against them on various grounds, including Eleventh Amendment immunity and failure to state a claim under Fed. R. Civ. P. 12(b)(6). On January 15, 2009, the Court granted in part and denied in part that motion to dismiss [Docket No. 96]. As a result of the Court's January 15, 2009 Order, the only claims remaining in this action are plaintiff's ADA claims arising on or after February 20, 2005 that seek equitable relief against the CDOC for discriminatory denial of access to medical care and failure to accommodate Mr. Hughes' mental health impairment, and his state law contract claims against defendant RRK Enterprises, Inc. – to the extent such claims are not barred by the statute of limitations.

Since the Court's January 15, 2009 Order, plaintiff was released on parole. Specifically, Hughes was released for a two-year term of parole on April 15, 2009. CDOC's Mot. to Dismiss [Docket No. 137], Ex. A. Conditions of Hughes' parole included, among others, participation in a mental health assessment, participation in a drug/alcohol treatment program, taking all prescribed medications, and participation in intensive supervision for 180 days at the discretion of his parole officer. *Id.* During his parole, Hughes was to reside with his mother and follow an 8:00 p.m. to 6:00 a.m.

curfew. *Id.*, Ex. B & E. Shortly after being released on parole, Hughes reported to the Department of Veterans Affairs for purposes of receiving treatment and was assigned a case worker and a mental health medication prescriber. *Id.*, Ex. C. Hughes had at least two visits with medical care providers under his treatment plan in April and May 2009. *Id.*, Ex. C & D.

Hughes violated his parole conditions on three separate occasions in June and July 2009. *Id.*, Ex. E. He failed to return to his mother's residence at the required curfew time on each occasion, exceeding his curfew by approximately 48 hours, 12 hours, and 10 hours on different days. *Id.* As a result, Hughes came before the Colorado Parole Board on July 30, 2009. *Id.*, Ex. F. The Parole Board found Hughes guilty of three counts of violating the conditions of his parole, but continued his parole subject to 180 days of intensive supervision at Hughes' parole officer's discretion. *Id.*

Two days later, on August 1, 2009, Hughes absconded from parole and, as of August 24, 2009, is on escape status. *Id.*, Ex. G & Attach. Plaintiff's counsel has not heard from Hughes since late June 2009 and does not know where or how to reach him. Pl.'s Resp. to CDOC's Mot. to Dismiss [Docket No. 140] ¶¶ 2, 3. Although both the CDOC and plaintiff's counsel speculate that Hughes will soon be apprehended and returned to the CDOC's custody, it is undisputed that, as of the date of this Order, Hughes is at large in violation of his parole conditions and has had no contact with his attorney for four months.

**II. ANALYSIS**

The CDOC moves to dismiss Hughes' claims on equitable grounds under the

fugitive disentitlement doctrine. Plaintiff's counsel has not proffered argument on this doctrine. Instead, Hughes' counsel requests that the Court administratively close this case, with leave to re-open, on the grounds that counsel is presently unable to pursue an action on behalf of a client with whom she has no current contact.

In its classic form, "[t]he fugitive disentitlement doctrine permits a court to dismiss a [criminal] defendant's appeal if he flees while [his] appeal is pending." *Martin v. Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008). This is a longstanding doctrine that has been repeatedly recognized by the Supreme Court. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). "The doctrine has its origin in the criminal context and arises from a court's inherent authority to protect its proceedings and judgments." *Martin*, 517 F.3d at 1204 (citations omitted). The doctrine is premised primarily upon a "concern for the enforceability of a court's judgments and a "'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment.'" *Id.* (quoting *Ortega-Rodriguez*, 507 U.S. at 240); *see also Degen v. United States*, 517 U.S. 820, 824 (1996) ("First, so long as the party cannot be found, the judgment on review may be impossible to enforce. . . . Second, we have said an appellant's escape disentitles him to call upon the resources of the Court for determination of his claims." (internal quotation marks omitted)). Application of the fugitive disentitlement doctrine is discretionary. *Martin*, 517 F.3d at 1206.

The extent to which the fugitive disentitlement doctrine applies in civil cases is an unsettled question. The Tenth Circuit has upheld application of the fugitive

disentitlement doctrine in a civil forfeiture action, *United States v. Timbers Preserve*, 999 F.2d 452, 455 (10th Cir.1993), and applied the doctrine in an immigration appeal. *Martin*, 517 F.3d at 1204-05.  After the Tenth Circuit's decision in *Timbers Preserve*, the Supreme Court addressed the fugitive disentitlement doctrine as applied to a civil forfeiture action in *Degen v. United States*[1].  In *Degen*, the Supreme Court held that the rationales underlying the doctrine did not permit the district court to strike the filings of a fugitive living abroad or grant summary judgment against him for failing to appear in a related criminal prosecution.  *Id.* at 828-29.  Since *Degen*, some federal courts have narrowed their application of the fugitive disentitlement doctrine in civil cases, applying it only where a person's fugitive status has "a connection with the civil action," and dismissal "animate[s] the concerns" underlying the doctrine.  *Barnett v. Young Men's Christian Assoc., Inc.*, 268 F.3d 614, 618 (8th Cir. 2001).

Although neither the Supreme Court nor the Tenth Circuit has addressed the application of the fugitive disentitlement doctrine to civil rights claims brought under 42 U.S.C. § 1983 or other laws by a plaintiff who becomes a fugitive during the pendency of his case, a number of other federal courts have confronted this issue.  In *Sarlund v. Anderson*, 205 F.3d 973, 974 (7th Cir. 2000), the Seventh Circuit barred an appeal concerning the § 1983 claims of "a fugitive from justice with two arrest warrants outstanding against him."  The claims at issue alleged that certain law enforcement officers conspired against the plaintiff to deprive him of his civil rights in retaliation for

---

[1] *Degen v. United States*, 517 U.S. 820 (1996), was subsequently superseded by statute, but this legislative action is immaterial to the Court's consideration of the instant motion since the motion does not involve forfeiture of property.  *See* Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000).

reporting misconduct of the defendants that the plaintiff allegedly discovered while working as a confidential informant. *Id.* The Seventh Circuit distinguished the case before it from *Degen*:

> Our case is different because the plaintiff's fugitive status places him entirely beyond judicial control, thus creating a situation severely prejudicial to his adversaries. Since his whereabouts are unknown, he cannot be deposed by the defendants or made to pay costs (should he lose) or attorneys' fees (should he lose and his suit be adjudged sanctionably frivolous). There is nothing to prevent him from using the litigation process to harass the defendants with impunity, and no measure that we can think of short of dismissal of his suit that will protect the defendants from such harassment.

*Id.* at 975. Because the facts in *Sarlund* were similar to those of the earliest cases recognizing the fugitive disentitlement doctrine – where a convicted defendant became a fugitive pending appeal – the Seventh Circuit held that "the district judge should have invoked the doctrine and dismissed the suit without further ado, rather than put the defendants to the expense of defending on the merits." *Id.*

Two federal district court opinions involving facts similar to this case are also persuasive. In *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1117 (S.D. Cal. 2007), the court considered whether to dismiss the § 1983 claims of a plaintiff alleging that his parole supervisors imposed and enforced unconstitutional conditions of parole. The plaintiff in *Cordell* complained that his parole conditions were unsound because they required him to reside in a different California county than had been his home prior to his incarceration. *Id.* The plaintiff violated his parole conditions on three occasions by leaving the county where his parole residence was assigned and, ultimately, absconded from parole such that a warrant was pending against him during the pendency of his

case before the district court. *Id.* at 1118. The parolee commenced and participated in the federal litigation while admitting that he was a fugitive and that he was actively evading arrest. *Id.* at 1120. Under these circumstances, the *Cordell* court held that "[i]t would be inequitable to allow Plaintiff to litigate his claims challenging the legality of his parole while he remains a fugitive from the legal system." *Id.*

The court in *Griffen v. City of New York Correctional Commissioner*, 882 F. Supp. 295 (E.D.N.Y. 1995), addressed similar circumstances. There the plaintiff asserted that prison and hospital officials failed to provide prompt and adequate medical treatment in violation of the Eighth Amendment. *Id.* at 296. The court addressed whether the case should be dismissed after the plaintiff absconded from parole. *Id.* Applying the fugitive disentitlement doctrine, the court noted:

> Any order of the Court, whether involving discovery, pre-trial motions or the trial itself, would be effectively unenforceable because [the plaintiff] is beyond the control of the court. His unknown whereabouts would doubtlessly frustrate the efforts of appointed *pro bono* counsel to communicate with his client and represent [the plaintiff's] interests.

*Id.* at 297. Thus, the court dismissed the absconder-parolee's complaint. *Id.*

Hughes' position is little different than that of the plaintiffs in the *Cordell* and *Griffen* cases. Here too, the Court finds dismissal appropriate. Hughes' own counsel admits that his whereabouts are unknown and that his legal representation in this proceeding is severely compromised by that fact. It cannot be doubted that Hughes' conduct is prejudicial to the defendants. Although discovery in this matter has closed, pretrial proceedings remain. *See* [Docket No. 134] (vacating Final Pretrial Conference and stating that such conference will be reset pending resolution of various motions).

Hughes' absence is likely to inhibit (or outright prevent) both his own attorney's preparation for the Final Pretrial Conference as well as defendants' participation therein. Trial could not take place absent direction from plaintiff, much less settlement negotiations.

This case illustrates the fundamental considerations undergirding the fugitive disentitlement doctrine. That is, Hughes' absence calls into question the efficacy of any order or judgment issued by this Court if this matter proceeds; it poses a significant risk of delaying or frustrating the Court's consideration of the merits of Hughes' claims; and it constitutes an affront to the judicial process. *See Degen*, 517 U.S. at 824-25. Moreover, Hughes' fugitive status is equitably related to the merits of his claim. Hughes complains that defendants precluded him from obtaining adequate access to medical treatment, which in turn caused him to forego an earlier term of parole. Yet when he was placed on parole with parole conditions mandating that he obtain medical treatment for his mental health conditions, Hughes did not carry through with such treatment and, instead, fled custody. The fact that Hughes has a pattern of escapes while on parole supervision and is "mentally disabled," Pl.'s Resp. to Mot. to Dismiss [Docket No. 140] at 2, does not merit mere administrative closure of this case given the unreasonable delay caused to the administration of justice and the uncertainty of when he will be apprehended. Dismissal of Hughes' complaint in its entirety is therefore appropriate under the fugitive disentitlement doctrine.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Colorado Department of Corrections' motion to dismiss [Docket No. 137] is GRANTED.  It is further

**ORDERED** that defendant Colorado Department of Corrections' motion to dismiss, or in the alternative, motion for sanctions [Docket No. 83]; plaintiff Chris Bernard Hughes' unopposed motion to vacate hearing on motion for class certification [Docket No. 103]; plaintiff's motion for leave to file Third Amended Complaint [Docket No. 107]; defendant RRK Enterprises, Inc.'s motion to dismiss [Docket No. 109]; plaintiff's motion for default judgment as to defendant Colorado Department of Corrections [Docket No. 119]; and plaintiff's motion to strike defendant RRK Enterprises, Inc.'s motion to dismiss [Docket No. 120] are DENIED as moot.  It is further

**ORDERED** that defendant Colorado Department of Corrections' motion to withdraw its motion to dismiss for lack of subject matter jurisdiction [Docket No. 139] is GRANTED.  It is further

**ORDERED** that defendant Colorado Department of Corrections' motion to dismiss for lack of subject matter jurisdiction [Docket No. 123] is DENIED as withdrawn.  It is further

**ORDERED** that this matter, and all claims asserted therein, is dismissed with prejudice. The Clerk of Court shall forthwith enter judgment in favor of defendants Colorado Department of Corrections and RRK Enterprises, Inc. and against plaintiff Chris Bernard Hughes.

DATED September 21, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge